FILED

2012 Mar-23  PM 03:15
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **JENNIFER LEIGH LAWLEY,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| **vs.** | ) | Civil Action Number |
| | ) | **2:10-cv-3360-AKK** |
| **MICHAEL J. ASTRUE,** | ) | |
| **COMMISSIONER OF SOCIAL** | ) | |
| **SECURITY** | ) | |
| **ADMINISTRATION,** | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Plaintiff Jennifer L. Lawley ("Plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration.  This court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is supported by substantial evidence.  Therefore, for the reasons elaborated herein, the Court will **AFFIRM** the decision denying benefits.

## I. Procedural History

Plaintiff filed her applications for Title II disability insurance benefits and

Title XVI Supplemental Security Insurance ("SSI") on July 31, 2007, alleging a disability onset date of October 15, 2006, from "[b]i-polar/manic depressive with psychotic episodes/thyroid disease." (R. 145, 168). Plaintiff's disability report alleged also that she is unable to work because she "[c]annot function to hold a job. Severe mood swings. Cannot remember things. Blackouts. The thyroid affects whole body - infections, etc." (R. 168). After the denial of her applications on October 10, 2007, (R. 100), Plaintiff requested a hearing on December 4, 2007, (R. 116), and received one on July 8, 2009, (R. 69). At the time of the hearing, Plaintiff was 28 years old, (R. 73), had an eleventh grade education and a GED, *id*., and past relevant work that included light and unskilled work as a sales associate, light and low semi-skilled work in customer service, and sedentary and semi-skilled work as a telephone operator and clerical worker, (R. 90). Plaintiff has not engaged in substantial gainful activity since October 15, 2006. (R. 168).

The ALJ denied Plaintiff's claims on February 18, 2010, (R. 9), which became the final decision of the Commissioner when the Appeals Council refused to grant review on September 30, 2010, (R. 1). Plaintiff then filed this action pursuant to section 1631 of the Act, 42 U.S.C. § 1383(c)(3). Doc. 1.

## II.  Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'"  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence."  *See id*.  (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings.

*See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance."  *Lamb*, 847 F.2d at 701.

### III.  Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f).  Specifically, the Commissioner must determine in sequence:

(1)    whether the claimant is currently unemployed;

(2)    whether the claimant has a severe impairment;

(3)    whether the impairment meets or equals one listed by the Secretary;

(4)    whether the claimant is unable to perform his or her past work; and

(5)     whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of 'not disabled.'"  *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)).  "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do."  *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

## IV.  The ALJ's Decision

The court turns now to the ALJ's decision to ascertain whether Plaintiff is correct that the ALJ committed reversible error.  In that respect, the court notes that, performing the five step analysis, initially, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date, and therefore met Step One.  (R. 57).  Next, the ALJ acknowledged that Plaintiff has the following "medically determinable impairments:"  bipolar disorder; anxiety; depression; a history of polysubstance abuse (alcohol, marijuana, crack cocaine, opiates, and sedatives); a borderline personality disorder; hypothyroidism; and hypertension, and, as a result, met Step Two.  *Id*.  The ALJ found also that

Plaintiff's "mental impairments, when considered in combination, impose a moderate restriction of her daily activities; a moderate limitation of her ability to maintain social functioning; a moderate limitation of her ability to maintain concentration, persistence, or pace; and no extended duration episodes of decompensation in work settings." *Id.* Having determined that Plaintiff met Step Two, the ALJ proceeded to the next step and found that Plaintiff did not satisfy Step Three since Plaintiff's

> impairments, when considered in combination, met Listing 12.09 in Appendix 1 to Subpart P, 20 C.F.R., Part 404, during those periods when she was abusing drugs and/or alcohol, but do not currently meet or equal any impairment listed in Appendix 1 to Subpart P, 20 C.F.R., Part 404. In making this finding, I have considered particularly Listings 12.04, 12.06, and 12.08. In finding that none of those listings is met or equaled, I note that while [Plaintiff] has abused massive amounts of drugs and alcohol on multiple occasions, she has not attempted suicide except when abusing drugs and/or alcohol. Dr. Randolph specifically noted no impairment that would qualify for psychiatric disability. Thus, during those times when [Plaintiff] was abusing drugs and/or alcohol, her substance abuse was material to the determination of her disability.

(R. 54; *see also* 57-58).

Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, he proceeded to Step Four where he determined that

> [n]ow that [Plaintiff] has stopped abusing drugs and alcohol, she

> retains the residual functional capacity to perform medium work in
> which she will be working with things and not people.  She is further
> restricted from assembly and production work, and is limited to
> simple, repetitive, noncomplex tasks.

(R. 58).  Further, the ALJ acknowledged that the Vocational Expert ("VE")

testified that Plaintiff's RFC restrictions would "prevent performance of [her] past

relevant work" as a light and unskilled sales associate and sedentary and semi-

skilled work as a data entry clerk.  (R. 55, 59).  Lastly, in Step Five, the ALJ

considered Plaintiff's age, education, work experience, RFC, and impairments,

and determined that Plaintiff has the RFC to perform medium and light jobs,

which exist in significant numbers in the national economy. (R. 59).  Because the

ALJ answered Step Five in the negative, the ALJ determined that Plaintiff is not

disabled.  (R. 60); *see also McDaniel*, 800 F.2d at 1030.  It is this finding that

Plaintiff challenges in this action.

## V.  Analysis

The court turns now to Plaintiff's contentions.  Specifically, Plaintiff

contends that the ALJ committed reversible error because he failed to (1) state

Plaintiff's date last insured ("DLI"), doc. 5 at 5, (2) determine that Plaintiff's

impairments were "severe" and that Plaintiff could not return to her past work,

doc. 5 at 4, 5, (3) determine when Plaintiff was not using drugs so that he could

properly assess Plaintiff's vocational limitations at that time, *id.* at 6, (4) consider Plaintiff's impairments to determine if Plaintiff meets Listing 12.09, *id.* at 8, (5) properly explain his findings that substance abuse was a factor material to her disability because the ALJ improperly relied on Dr. Christopher Randolph's ("Dr. Randolph") "inadequat[e]" consulting examination, *id.* at 9, and (6) fully develop the record because he failed to obtain the opinion of a medical expert to "clarify the nature and extent of Plaintiff's mental and physical limitations," *id.* at 11. Based on its review of the record, the court disagrees with Plaintiff that the ALJ committed reversible error.

A.     *The ALJ's failure to state Plaintiff's DLI was harmless error.*

First, Plaintiff contends that the ALJ's decision is "procedurally deficient" because the ALJ failed to state Plaintiff's DLI, and cites *Frazzetto v. Chater*, 904 F. Supp. 1371 (M.D. Fla. 1995), a case where the ALJ mistakenly determined that the plaintiff had a DLI of December 31, 1991, and found that "evidence after this date was deemed to be irrelevant and not material." *Id.* at 1373. The plaintiff discovered subsequently that he had a DLI of December 31, 1992. As a result, the court remanded with instructions for the ALJ to hold a supplemental hearing to hear evidence through the actual December 31, 1992, DLI date. *Id.*

Unfortunately for Plaintiff, *Frazzetto* is distinguishable from the facts in her

case because, here, the ALJ thoroughly summarized and considered Plaintiff's

<u>entire</u> extensive medical record through August 2009.[1]  In fact, the ALJ stated that

Plaintiff "has not been 'disabled' at any time <u>through the date of this decision</u>,"

i.e., February 18, 2010.  (R. 60) (emphasis added).  Therefore, to the extent that

the ALJ erred by not stating specifically that Plaintiff's DLI was March 31, 2012,

(R. 157), any such error was harmless because the ALJ considered Plaintiff's

entire medical history.

B.    *The ALJ properly followed the five-step sequential analysis although he did
      not specifically state that Plaintiff's impairments were "severe" and relied
      on the VE's testimony that Plaintiff could not perform her past relevant
      work.*

       Next, Plaintiff challenges the ALJ's application of the five-step sequential

analysis.  Plaintiff contends that the ALJ erred in failing to (1) determine that

Plaintiff had severe impairments, and (2) expressly state that Plaintiff could not

perform her past relevant work.  Doc. 5 at 8-11.  These contentions also lack merit.

       1.    <u>The ALJ found that Plaintiff's impairments were "severe."</u>

       Although the ALJ did not state specifically that Plaintiff had severe

impairments at Step Two of the analysis, (R. 57), the ALJ clearly reached this

───────────────

       [1]At the hearing, in response to the ALJ's question, "[A]re there any additional treating
medical source or sources which have not already been made part of your client's case record?"
Plaintiff's counsel answered, "No, your Honor."  (R. 72).

conclusion since he proceeded to Step Three, (R. 57-58). Stated differently, if Plaintiff is correct that the ALJ never found that Plaintiff had severe impairments, the ALJ would have answered Step Two in the negative, and because a negative answer at Step Two of the sequential analysis leads to a determination of not disabled, *McDaniel*, 800 F.2d at 1030 (citing 20 C.F.R. § 416.920(a)-(f)), the ALJ would not have proceeded to Step Three. Here, though, after outlining Plaintiff's medically determinable impairments in Step Two, the ALJ continued to Step Three where he considered whether Plaintiff met a listing. Therefore, on this record, it is clear that the ALJ implicitly found that Plaintiff had severe impairments.

    2.    <u>The ALJ relied on the VE's assessment that Plaintiff could not perform her past relevant work.</u>

Plaintiff next contends that the ALJ erred by failing to find that Plaintiff could not perform her past relevant work. Doc. 5 at 6. This contention is also unfounded because the ALJ made his finding based on the VE. In particular, the ALJ found that the

> [VE] testified that the restrictions contained in the preceding paragraph would prevent performance of [Plaintiff's] past relevant work. Therefore, the burden shifts to the Commissioner of the Social Security to show that there are other jobs that exist in significant numbers in the national economy that [Plaintiff] retains the residual functional capacity to perform, consistent with her medically

determinable impairments, functional limitations, age, education, and
work experience.

(R. 55). It is clear from the ALJ's opinion that he relied in Step Four on the VE's

assessment that Plaintiff could not perform her past relevant work, and then

proceeded to Step Five where the ALJ assumed the burden of showing that jobs

exist that Plaintiff can perform.

    Contrary to Plaintiff's contention, this court finds that the ALJ properly

made the required findings at each step of the five step sequential process, and, in

fact, only rendered a finding of non-disabled after he answered Step Five in the

negative. (R. 59). Accordingly, the court rejects Plaintiff's assertion that the ALJ

improperly applied the five sequential analysis.

C.    *The ALJ's determination that Plaintiff's drug use was a contributing factor
      material to a non-disability determination is supported by substantial
      evidence.*

    Lastly, Plaintiff challenges the ALJ's finding that Plaintiff's drug and

alcohol abuse was a contributing factor material to the disability determination.

Specifically, Plaintiff asserts that the ALJ (1) failed to determine when Plaintiff

stopped abusing drugs and alcohol in assessing Plaintiff's vocational limitations,

doc. 5 at 7, (2) failed to make adequate findings regarding Listing 12.09, *id*. at 8,

(3) improperly relied on the opinion of Dr. Randolph, a consulting physician, to

find a nexus between Plaintiff's drug and alcohol abuse and her suicide attempts to

determine that Plaintiff did not have an impairment that would qualify as a

psychological disability, *id*. at 9, and (4) erred by failing to request a medical

expert to determine the "nature and extent of Plaintiff's mental and physical

limitations," *id*. at 11.  The court disagrees with Plaintiff that the ALJ's decision is

not supported by substantial evidence.

The relevant regulation pertaining to whether drug and alcohol abuse are a

contributing factor material to the disability determination states, in part:

> (1) The key factor we will examine in determining whether drug
> addiction or alcoholism is a contributing factor material to the
> determination of disability is whether we would still find you
> disabled if you stopped using drugs or alcohol.
>
> (2) In making this determination, we will evaluate which of your
> current physical and mental limitations, upon which we based our
> current disability determination, would remain if you stopped using
> drugs or alcohol and then determine whether any or all of your
> remaining limitations would be disabling.
>
>> (i)    If we determine that your remaining limitations would
>>        not be disabling, we will find that your drug addiction or
>>        alcoholism is a contributing factor material to the
>>        determination of disability.
>>
>> (ii)   If we determine that your remaining limitations are
>>        disabling, you are disabled independent of your drug
>>        addiction or alcoholism and we will find that your drug
>>        addiction or alcoholism is not a contributing factor
>>        material to the determination of disability.

20 C.F.R. §404.31535(b)(1) and (2)(i) and (ii).  Stated differently,

> Congress amended the Social Security Act to provide that a claimant
> "shall not be considered to be disabled for purposes of this subchapter
> if alcoholism or drug addiction would (but for this subparagraph) be a
> contributing factor material to the Commissioner's determination that
> the individual is disabled." Pub. L. No. 104-121, § 105(a)(1), (b)(1),
> 110 Stat. 847, 852, 853 (codified as amended at 42 U.S.C. §
> 423(d)(2)(C) (1997)).  The regulations implementing § 423(d)(2)(C)
> provide that once the Commissioner determines a claimant to be
> disabled and finds medical evidence of drug addiction or alcoholism,
> the Commissioner then "must determine whether . . . drug addiction
> or alcoholism is a contributing factor material to the determination of
> disability." 20 C.F.R. § 404.1535.  The key factor in determining
> whether drug addiction or alcoholism is a contributing factor material
> to the determination of a disability (the "materiality determination") is
> whether the claimant would still be found disabled if he stopped
> using drugs or alcohol.  *See* 20 C.F.R. § 404.1535(b)(1).

*Doughty v. Apfel*, 245 F.3d 1274, 1278-79 (11th Cir. 2001).  Critically, when

making the "materiality determination," "the claimant bears the burden of proving

that his alcoholism or drug addiction is not a contributing factor material to his

disability determination." *Id.* (citing *Brown v. Apfel*, 192 F.3d 492 (5th Cir. 1999);

*Mittlestedt v. Apfel*, 204 F.3d 847 (8th Cir. 2000)).

      1.     The ALJ properly considered Listing 12.09.

Plaintiff contends that the ALJ erred by failing to specify what Part A

medical findings he considered in Listings 12.04, 12.06, and 12.08, which made it

difficult to "discern the basis of the disability" determination.[2]  Doc. 5 at 9.  This

argument is unpersuasive.  First, and tellingly, Plaintiff failed to point to <u>any</u>

record evidence that established that she meets any of the Part A medical findings

in the listings.  This error is fatal to Plaintiff's claim because she "bears the burden

of proving that [her] alcoholism or drug addiction is not a contributing factor"

material to her disability claim.  *Doughty*, 245 F.3d at 1278-79.  Second, the ALJ

provided the necessary specifics because he outlined the listings he considered.  In

that regard, the ALJ held that Plaintiff met Listing 12.09 "when she was abusing

drugs and/or alcohol," and that he

> considered particularly Listings 12.04 [affective disorders], 12.06
> [anxiety related disorders], and 12.08 [personality disorders].  In
> finding that none of those listings is met or equaled, I note that while
> [Plaintiff] has abused massive amounts of drugs and alcohol on
> multiple occasions, she has not attempted suicide except when
> abusing drugs and/or alcohol.

(R. 54).  The ALJ's finding implies that he considered all of the Part A medical

findings in Listings 12.04, 12.06, and 12.08.  Because Plaintiff bears the burden of

providing evidence to prove disability, i.e., citing evidence that supports her

contention that she meets a listing, *see* 20 C.F.R. § 416.912(a) and (c), Plaintiff's

attempt to discredit the ALJ's decision with bald and unsubstantiated assertions is

---

[2]Plaintiff concedes that the ALJ "provide[d] a Part B analysis [ ], finding moderate
restriction in activities of daily living, social functioning, ability to maintain concentration, and
no extended periods of decompensation."  Doc. 5 at 8; *see also* R. 53.

insufficient to show that the ALJ's finding is unsupported by the record.

Therefore, the court finds that the ALJ committed no reversible error.

2.   The ALJ did not err in relying on Dr. Randolph's opinion and
     substantial evidence supports the ALJ's decision that Plaintiff is not
     disabled.

Plaintiff challenges next the ALJ's purported reliance on Dr. Randolph's

opinion.  Dr. Randolph diagnosed Plaintiff with polysubstance dependence and

borderline personality.  (R. 650).  Although the ALJ stated that Dr. Randolph

"specifically noted no impairment that would qualify for psychiatric disability,"

the ALJ did not, however, state what weight, if any, he assigned to Dr. Randolph's

opinion.  (R 54).  Nonetheless, because Dr. Randolph's opinion is consistent with

the record as a whole, as discussed below, the ALJ did not err in considering it.

The ALJ found that Plaintiff's drug and alcohol abuse were a contributing

factor material to a disability determination because Plaintiff met Listing 12.09[3]

only when she abused drugs and/or alcohol.  (R. 57-58).  Specifically, the ALJ

noted that Plaintiff "has not attempted suicide except when abusing drugs and/or

alcohol."  (R. 54).  To the extent that Plaintiff disagrees, the burden is on Plaintiff

to prove that alcoholism or drug abuse is not a contributing factor material to her

---

[3]Listing 12.04 is affective disorders, Listing 12.06 is anxiety related disorders, Listing
12.08 is personality disorders, and Listing 12.09 is substance addiction disorders, which is met
when the requirements of Listings 12.04, 12.06, and 12.08 are met.

condition.  *Doughty*, 245 F.3d at 1278-79.  However, Plaintiff failed to make this

showing.  In fact, Plaintiff's extensive medical treatment and hospitalizations are

replete with references to drug and/or alcohol abuse that support the ALJ's

finding.

Plaintiff's extensive medical record begins on June 6, 2002, when

HealthSouth Hospital admitted Plaintiff for "suicidal ideation, symptoms of major

depression, substance abuse and dependence, and symptoms of a borderline

personality disorder."  (R. 237).  Plaintiff was diagnosed with depressive disorder,

substance dependance-specifically marijuana, borderline personality disorder, and

multiple psychosocial stressors, and discharged in good condition on June 7, 2002.

(R. 236).

The next medical entry occurred four years later, when Plaintiff visited the

Coosa Valley Medical Center on October 21, 2006, due to an overdose of Xanax

and Ambien.  She denied suicidal ideation, and was discharged that same day.  (R.

243).  Five days later, Plaintiff received an electroencephalograph at the

University of Alabama at Birmingham Hospital ("UAB") which recorded no

seizure activity.  (R. 263). There are no other records from 2006.

In 2007, Plaintiff sought treatment at Brookwood Medical Center

("Brookwood") three times.  The first visit occurred on August 2, 2007, when, a

week after "[Plaintiff] woke in the bed and [her boyfriend] had died in the night,"
Brookwood admitted Plaintiff due to "suicidal depression and bipolar disorder."
(R. 256).  The progress report noted that Plaintiff "denies illicit drug or alcohol
use, but she takes Dilaudid[4] for pelvic pain.  I do not know whether her use of
Dilaudid has been perfectly appropriate or not."  *Id*.  Plaintiff's second visit
occurred a month later on September 10, 2007, when Brookwood again admitted
her for "worsening depression in the context of overuse of her medication and
recent death of her fiancé."  (R. 343).  Brookwood discharged Plaintiff the next
day and encouraged her to follow up with her local mental health clinic.  (R. 344).
Approximately two weeks later, on September 25, 2007, Brookwood admitted
Plaintiff again due to "worsening suicidal thoughts and overdose on Vistaril[5], but
[Plaintiff] came forward with recent activities of substance abuse, brought in for
detox and stabilization."  (R. 319).  Brookwood physicians diagnosed and treated
Plaintiff for continuous opiate dependence and bipolar affective disorder, and
discharged her on September 28, 2007, with instructions to follow up with her
local mental health center.  *Id*.

     From approximately November 2007 through April 2008, Plaintiff resided

---

[4]Dilaudid is used to relieve moderate to severe pain.

[5]Vistaril is used to treat anxiety and symptoms of alcohol withdrawal.

at the Lovelady Rehabilitative Shelter.  (R. 298).  On April 2, 2008, she was again admitted to Brookwood for increased depression, bipolar affective disorder, and a history of polysubstance abuse.  *Id*.  Plaintiff's intake "urine drug screen was negative."  *Id*.

The next year, on January 10, 2009, Plaintiff was admitted to St. Vincent's East after Plaintiff was found unresponsive in her car following an attempted suicide by "overdosing on Synthroid, Invega, and Klonopin."[6]  (R. 391).  Plaintiff "left against medical advice on 01/13/2009 with boyfriend assuming all responsibility."  *Id.*; R. 393.

Plaintiff was hospitalized twice in May 2009 beginning on May 15, 2009, when UAB admitted her after she reported "auditory hallucinations and suicidal ideations without plan."  (R. 475).  UAB discharged Plaintiff on May 18, 2009, with a notation that the amphetamines in Plaintiff's urine were "from diet pills that she has been taking that were prescribed to another person," and that Plaintiff "has been noncompliant with outpatient followup and missed her last appointment."  *Id*.  Three days later, on May 21, 2009, Plaintiff presented to UAB emergency department after she overdosed on her prescribed medications used to treat

---

[6]Synthroid is used to treat hypothyroidism, Invega is used to treat symptoms of schizophrenia, and Klonopin is a benzodiazepine used to treat panic attacks.

hypertension (metroprolol), and anxiety caused by alcohol withdrawal symptoms
(Oxazepam).  (R. 459).  According to the Emergency Medicine Report,  Plaintiff
"denie[d] use of any other drugs, any alcohol."  *Id*.  Her urine toxicity report was
"positive for benzos (Oxazepam).  Alcohol was not detected."  (R. 460, 457).
After stabilizing Plaintiff in the intensive care unit, UAB transferred Plaintiff the
next day to its Medicine Service floor where psychiatrists evaluated Plaintiff and
determined that she needed inpatient psychiatric treatment because "[Plaintiff] has
still been suicidal."  (R. 457).

Consequently, on June 3, 2009, UAB transferred Plaintiff to its inpatient
psychiatric facility, *id*., where Plaintiff reported that she was "stressed out about
everything," and again, denied "any use of cocaine or drinking."  (R. 450).  The
attending psychiatrist diagnosed Plaintiff with major depressive disorder and
discharged Plaintiff on June 17, 2009, for transfer to Hill Crest Psychiatric
Hospital ("Hill Crest") for "further elaboration of her ongoing psychological
needs."  (R. 452).  That same day, Plaintiff received a history and psychiatric
evaluation by Dr. James Barnett ("Dr. Barnett") of Hill Crest, and Plaintiff
reported that she "is no longer using street drugs, but has found that she is now
having problems with alcohol."  (R. 409) (emphasis added).  Dr. Barnett found
that Plaintiff suffered from a depressed mood and "chronicity of psychiatric

problems and depression," and diagnosed Plaintiff with major depression without psychotic features, dysthymic disorder, and alcohol dependency.  (R. 410).

Based on its review of the Plaintiff's extensive medical record, the court finds that Dr. Randolph's opinion that Plaintiff suffered from polysubstance abuse dependency and borderline personality is consistent with the record as a whole. Therefore, to the extent that the ALJ relied on it, the ALJ did not commit reversible error.  Moreover, although Plaintiff contends that her conditions are unrelated to alcohol and drug dependency, the medical evidence suggests otherwise.  Critically, substantial evidence supports the ALJ's finding that Plaintiff has "not attempted suicide except when abusing drugs and/or alcohol." In fact, the medical evidence confirms Plaintiff's drug and alcohol abuse and her non compliance for treatment of her impairments, including when Plaintiff discharged herself against medical advice and to the care of her boyfriend. Furthermore, and more importantly, Plaintiff has not presented <u>any</u> evidence to show that alcohol and drug usage are not the cause or do not factor in her impairments.  Therefore, Plaintiff has not met her burden of proving that her alcohol and drug usage are not contributing factors material to her non-disability determination.  In other words, the ALJ's determination that Plaintiff's alcohol and drug usage are material contributing factors to her condition is supported by

substantial evidence, including Plaintiff's own admissions regarding her drug and alcohol usage (R. 87).

    3.    The ALJ properly assessed Plaintiff's vocational limitations.

        Plaintiff's next contention that the ALJ did not properly consider Plaintiff's vocational limitations because he failed to determine when Plaintiff stopped abusing drugs and alcohol is also unpersuasive.  Because Plaintiff's history of drug and alcohol abuse is documented virtually throughout Plaintiff's medical records, the ALJ did not err in failing to determine when Plaintiff's drug and alcohol abuse ended.  Further, the ALJ was in the best position to assess Plaintiff's abilities during her period of sobriety, since she testified at her hearing on July 8, 2009, that she has not abused drugs or alcohol since April 2009, (R. 80), and sought help at a mental health center.  (R. 80-89).  Unfortunately, Plaintiff's testimony of sobriety is not substantiated by Dr. Barnett's June 17, 2009, evaluation entry that Plaintiff admitted she is "now" having problems with alcohol.  (R. 409).  Therefore, the court finds no error in the ALJ's failure to determine Plaintiff's periods of sobriety.

    4.    The ALJ did not err in failing to request a psychological consultation.

        Finally, Plaintiff contends that the ALJ "could" have obtained a "medical expert to clarify the nature and extent of Plaintiff's mental and physician

limitations" and cited the regulations to support her contention, which states that

the ALJ "may ask for and consider the opinion of a medical or psychological

expert concerning whether your impairment(s) could reasonably expected to

produce your alleged symptoms."  Doc. 5 at 11; 20 C.F.R. 404.1529(b) (emphasis

added).  Plaintiff's assertion misses the mark.  First, because the plain meaning of

the statute does not require the ALJ to obtain medical expert opinion, this court

finds that the ALJ committed no reversible error in failing to do so.  Second,

Plaintiff's voluminous medical and psychological records obviated the need for

further medical opinion, especially in light of the ALJ's thorough review of

Plaintiff's entire medical record.[7]  (R. 13-41).  In short, because Plaintiff failed

again to meet her burden of proving disability, *see* 20 C.F.R. § 416.912(a), the

court finds that the ALJ's decision is supported by substantial evidence.

## VI.  Conclusion

Based on the foregoing, the court concludes that the ALJ's determination

that Plaintiff is not disabled is supported by substantial evidence, and that the ALJ

applied the proper legal standards in reaching this determination.  Therefore, the

Commissioner's final decision is **AFFIRMED**.  A separate order in accordance

---

[7]Plaintiff's counsel testified she did not have "any additional treating medical source or sources which have not already been made of part of [Plaintiff's] record."  (R. 71-72).

with the memorandum of decision will be entered.

Done the 23rd day of March, 2012.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE